## DETERMINATION OF THE AMOUNT DUE FROM A COMPENSATED SURETY COMPANY ON A BUILDING CONTRACT.

Court of Appeals for Fayette County.

SOUTHERN SURETY COMPANY v. MASONIC TEMPLE COMPANY OF WASHINGTON COURT HOUSE.

Decided, November 11, 1915.

*Default Under a Building Contract—Compensated Surety Not Released by Minor Changes in Building Plans Made to Conform with State Regulations—Nor by Excessive Progress Estimates by Architect, When—Loans to Contractor for Purchase of Material—Notice to Surety as to Defaults—Evidence.*

1. Changes of a minor character in the building plans made to conform the building to state regulations, reported to the agent of the surety company during the progress of the work and not objected to by him, do not release the surety guaranteeing performance of the building contract by the contractor.

2. Where the building contractor delegates to an architect authority to make progress estimates, the payment of such estimates made by such architect which are regular upon their face, but shown by extrinsic evidence to be in excess of the amount fixed in the contract as the basis for the architect certificate, does not, in the absence of fraud or collusion, release the surety upon the contractor's bond; nor, in the absence of collusion or bad faith, is the owner bound to give notice to the surety of the fact that such estimates are actually in excess of the stipulated basis.

3. Loans to the contractor made to enable him to obtain material and upon the agreement that such loans are to be repaid out of the estimates when made, do not release the surety upon the contractor's bond.

4. Failure of owner to notify the surety of minor defaults will not bar recovery upon the surety's bond for other and substantial defaults of which the surety was duly notified.

5. The certificate of the architect as to damages is not rendered incompetent as evidence nor invalid by the inclusion therein of the statement that it covers matters "brought to our notice" and that it was made partly "in view of sworn statements" of the agent of the owner,

*O. L. Rider,* for plaintiff in error.
*John Logan* and *E. L. Bush,* contra.

ALLREAD, J.

The Masonic Temple Company brought suit in the court of common pleas against E. E. Bope as principal and the Southern Surety Company as surety upon a bond for the performance of a building contract entered into by Bope with the Masonic Temple Company for the construction of a mercantile and lodge building in Washington Court House.

Bope defaulted, the surety company declined to complete the work and the temple company thereupon completed the building. The action is for the loss, including damages for delay.

The temple company recovered a verdict and judgment for $9,078.14. The judgment is brought here for review upon petition in error.

The defenses chiefly relied upon by the surety company are:

1. Change in the building contract subsequent to the giving of the bond and without the knowledge or consent of the surety.

2. Payment of estimates based upon full amount instead of ninety per cent. of wrought and fifty per cent. of unwrought material.

3. Advance payments to contractor.

4. Failure to notify surety company of prior defaults of contractor.

5. Insufficiency of evidence to support damages for delay.

Preliminary to the general consideration of the defenses it may be stated that the rule of *strictissimi juris* is not to be applied in all its latitude to cases of compensated sureties, but the surety's contract ''should receive a reasonable construction in order to carry out the presumed intention of the parties as expressed by the language used.'' *Bryant* v. *The American Bonding Co.,* 77 Ohio St., 90.

1. The changes in the plans of the building complained of were largely if not wholly made at the order of the state inspector. They did not change substantially the building, but were intended to conform the same to state regulations. The original plans included a public hall. The parties were pre-

sumed as a matter of law to contract with reference to the state inspection laws and to contemplate that changes of a minor character might be ordered. Besides, the testimony shows that shortly thereafter, and before any substantial part of the changes were constructed, Mr. Smith, vice-president of the surety company, was notified of the changes ordered and made no objections thereto. This was supplemented by additional evidence to the effect that after Bope's default the list of incompletions was furnished Mr. Smith and no objections were made as to them. The temple company then proceeded to complete the building with the changes incorporated.

It is also objected in this connection that these changes, in order to be binding on the surety, should also have been approved by the architect and prices agreed upon or fixed by arbitration. Whatever might have been the effect if either Bope or the temple company had objected, we are not called upon to decide. Both parties to the construction contract accepted these changes, and by acquiescense of all parties the additional cost was fixed by the architect under other provisions of the contract. In view of these circumstances wo do not consider that such changes constitute a defense to the surety company's liability.

2. The building contract provided that payments to the contractor should be made ''only upon certificates of the architects, as follows: based upon an allowance of ninety per cent. of material and labor actually in place in the building, and fifty per cent. of the material on ground. * * * And all payments shall be due when certificates for the same are issued.''

It appears that the architect did not follow this provision strictly, and it is claimed that estimates based upon the full amount of material and work were given from time to time and paid by the temple company.

The estimates of the architect were regular in form and did not show upon their face that they were made upon an irregular basis. There is no claim of collusion or fraud upon the part of the temple company, but it is claimed that the temple company knew of the basis upon which the certificates were made.

This is denied and there may be some doubt as to proof of this fact, but in view of the special instructions given by the

court to the jury we may ignore the conflict of evidence upon
this point and assume that there was some evidence upon which
the jury might have found that the temple company had knowl
edge of the actual basis of the certificates.   This, therefore,
brings us to the question of whether the temple company was
bound to revise or review the estimates of the contractor before
making payment.

Counsel for the temple company italicize the concluding sen
tence that "All payments shall be due when certificates for the
same are issued." Counsel for the surety company emphasize
the clause providing that payment shall be made only upon cer-
tificates founded upon the stipulated percentage.   This question
is not free from difficulty and is one upon which the authorities
in other states are in conflict.   We feel it to be our duty, in
view of the conflict of authority, to adopt such construction as
would seem to be just and reasonable and best calculated to pre-
serve and carry out the apparent intention of the parties to the
contract.

It must be kept in mind that the architect was not the agent
of the temple company, nor was he in any manner under its
control.   The architect was selected by the terms of the contract
as an independent authority or umpire.   If the estimates were
too low the contractor had no right to object, and if they were
too high the owner was equally bound.   So long as there was no
fraud or collusion we think the temple company was justified
in making payments strictly in conformity with the architect's
estimates.   Many of the authorities cited by learned counsel for
the surety company are cases where the obligation to make pay-
ments only upon certain percentages of work and material was
placed upon the owner and not upon an independent architect.

From the spirit and general import of the contract we think
that both parties expected to be bound in the progress of the
work by the architect's estimates.

The surety company contends, and not without a show of rea-
son, that in its bond it reserved a contingent interest in the re-
tained percentages and deferred payments, and also the right to
notice of final payment.   This condition of the bond would be
quite pertinent in a case where the owner had not followed

strictly the progress estimates of the architect and had paid amounts in excess of the architect's certificates, but we think it does not apply where the owner is proceeding strictly according to the architect's estimates.

The surety company, being a compensated surety, is presumed to have fashioned the conditions of its bond, and if it was desired to hold the owner to a stricter liability as to retained percentages and deferred payments such liability should have been definitely stated.

3. All the evidence offered tends to show that the advances made to the contractor were made as loans and not as advance payments. It is true that the understanding was that the loans were to be repaid out of estimates when available for that purpose. While there is conflict upon this subject, still we think the weight of authority sustains the view that such collateral loans did not vitiate the bond nor avoid liability thereon. *Stuts* v. *Strayer,* 60 Ohio St., 384.

It is contended that this question is eliminated by the admission of the reply that payments were made from time to time to Bope, but nevertheless we think that it was competent to show that the advances were loans and that the payments were not actually made until the loans were surrendered and the credit given upon the estimates.

It is also contended, both with respect to the advances and with respect to the payments upon the estimates, that the temple company was bound in justice to notify the surety company of the true basis of the estimates and of the advance payments and that the failure to notify them would be so prejudicial as to have the effect of discharging the surety.

The case of *Koppitz-Melchers Brewing Co.* v. *Schultz et al,* 68 Ohio St., 407, is cited, but it will be observed in considering that case that the obligee of the surety bond had expressly bound himself not to make the third shipment until the first had been paid for. That was an obligation upon which the surety had a right to rely. Here there was no such contract obligation on the part of the temple company. Both parties had agreed to submit the matter of estimates to the architect, and neither party, in

the absence of fraud or collusion, would be bound to keep the other advised as to the action of the architect in the absence of some stipulation to that effect.

4. The bond of the surety company provided for notice of default of the contractor and that the failure to give such notice would relieve the surety. Reading both conditions of the surety's bond, we think the default contemplated is one terminating the building contract or is one upon which the liability is based. It would be unreasonable to extend the letter of the first condition of the bond to every technical default or slight variance from the principal contract. To so hold would make surety bonds of little consequence.

5. We think the certificate of the architect was competent evidence on the subject of damages. The statement in the architect's certificate that it covered matters "brought to our notice" and was made partly in view of the sworn statements of E. L. Bush, did not affect its competency. These merely show the basis of the certificate and the evidence upon which the architect acted.

The case at bar is, in our judgment, distinguished from the case of *Spencer* v. *Duplan Silk Co.*, 112 Fed. Rep., 638.

It is also contended that the stipulated damages for delay amounted to a penalty and not liquidated damages. We think *prima facie* they should be considered liquidated damages and the burden was upon the surety company to impeach the *prima facie* effect of the contract.

It is also urged that the trial court erred in placing the burden of proof upon the surety company. In view of the averment of the petition as to the architect's certificate and of the failure of the answer to deny the giving of this certificate, a *prima facie* case was made out in favor of the temple company and the burden of proof under the pleadings was upon the defendant to impeach that certificate.

There are other assignments of error, but upon the whole record we have reached the conclusion that there is no prejudicial error.

Judgment affirmed.

FERNEDING, J., and KUNKLE, J., concur.